**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Civil Case Number 9:18-cv-81612-DMM**

JOHN FOURNEY,

*Plaintiff*,

v.

NPAS, INC.,

*Defendant*.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

**MOTION FOR SUMMARY JUDGMENT**

Defendant, NPAS, Inc. ("NPAS" or "Defendant"), respectfully files this Motion for Summary Judgment and Memorandum of Law in Support thereof, and states:

1. Plaintiff John Fourney sued NPAS for alleged violations of the Fair Debt Collection Practices Act (the "FDCPA," 15 U.S.C. § 1692, *et seq.*) and the Florida Consumer Collection Practices Act (the "FCCPA," § 559.55, *et seq.,* Fla. Stat.). Fourney's FDCPA claim is based on his receipt of a single letter from NPAS which he claims omitted certain warnings that the FDCPA requires debt collectors to include in initial correspondence with account debtors. Fourney's FCCPA claim is based on an alleged FDCPA violation. Absent a violation of the FDCPA, there is no violation of the FCCPA.

2. NPAS is entitled to summary judgment in its favor because, as a matter of uncontroverted fact, it is not a "debt collector" as that term is defined in the FDCPA (or, alternatively, Fourney is estopped from arguing otherwise). As NPAS was not a "debt

collector," it was not, therefore, required to give the warnings Fourney contends it omitted. Because Fourney cannot prevail on his FDCPA claim, his FCCPA claim also fails.

3. The bases for the relief sought by this Motion are more fully set forth in NPAS's supporting memorandum of law, as follows.

WHEREFORE, NPAS, Inc. respectfully requests that the Court enter summary judgment in its favor and against John Fourney, that Mr. Fourney take nothing by way of his Complaint, and that the Court enter such other or additional relief as it deems just and appropriate.

## MEMORANDUM OF LAW IN SUPPORT OF NPAS's MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendant NPAS, Inc. ("NPAS" or "Defendant") is entitled to summary judgment on Plaintiff John Fourney's claims under the Fair Debt Collection Practices Act (the "FDCPA," 15 U.S.C. § 1692, *et seq.*) and the Florida Consumer Collection Practices Act (the "FCCPA," § 559.55 *et seq.*, Fla. Stat.). NPAS is not a "debt collector" and, therefore, is not subject to the FDCPA

Fourney's FDCPA claim is based on his receipt of a single letter from NPAS, which he claims omitted certain warnings that the FDCPA requires debt collectors to include in initial correspondence with account debtors. In particular, Fourney alleges NPAS's letter failed to include a "mini-Miranda" warning and notice of Fourney's right to dispute all or any part of the debt referenced in NPAS's letter within thirty days. These requirements are imposed on debt collectors under the FDCPA. There is no analogous requirement under the FCCPA.

There are two primary problems with Fourney's claims. ***First***, the debt referenced in NPAS's letter was not in default and Fourney is estopped by contract from claiming otherwise. Absent a debt in default, the FDCPA plays no role in this case. ***Second***, the "mini-Miranda" and thirty-day dispute notices required under the FDCPA are required only of debt collectors. NPAS is not a "debt collector," as that term is defined in the FDCPA and Fourney can present no competent facts to the contrary.

Fourney's FCCPA (Florida) claim is based on the alleged FDCPA violation; absent a violation of the FDCPA, there is no violation of the FCCPA.

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1. NPAS performs extended back-office ("EBO") functions for healthcare providers, including contacting patients regarding accounts not in default. (Defendant's Interrogatory Responses ¶ 15, attached here as Exhibit A).

2. Fourney received a letter from NPAS on or about April 21, 2018. (Complaint, ¶ 11).

3. A copy of that letter is attached here as Exhibit B. (Plaintiff's Responses to Requests for Admission ¶ 1, attached as Exhibit C).

4. The letter bears a "statement date" of April 17, 2018 and identifies a "payment due date" of May 2, 2018. (Exhibit B).

5. The letter identifies a balance due for services Fourney received at Palms West Hospital ("Palms") on or about August 18, 2017. (Exhibit B).

6. The second page of the letter, under the header "frequently asked questions," identifies NPAS as "a company that is managing your account for the healthcare provider." (Exhibit B).

7. The letter does not state Fourney's account was delinquent. (Exhibit B).

8. The letter does not state NPAS is a debt collector. (Exhibit B).

9. The letter requests that payment be made to Palms West Hospital, not to NPAS. (Exhibit B).

10. On or about August 18, 2017, upon his admission to Palms West Hospital, Fourney executed an agreement titled "Conditions of Admission and Consent for Outpatient Care" (the "Conditions of Admission" ¶ 2, attached as Exhibit C here and Exhibit B to Defendant's Motion to Dismiss (Dec. 21, 2018) DOC 6-2).

11. The Conditions of Admission contract expressly addresses billing issues: "**Third Party Collection.** I acknowledge that the Providers may utilize the services of a third party Business Associate or affiliated entity as an extended business office ('EBO Servicer') for medical account billing and servicing."

12. The contract continues: "During the time that the medical account is being serviced by the EBO Servicer, the account shall not be considered delinquent, past due or in default, and shall not be reported to a credit bureau or subject to collection legal proceedings."

13. Further, "When the EBO Servicer's efforts to obtain payment have been exhausted due to a number of factors, . . . the EBO Servicer will send a final notice letter which

will include the date that the medical account may be returned from the EBO Servicer to the Provider."

14. Finally, "Upon return [of the medical account] to the Provider by the EBO Servicer, the Provider may place the account back with the EBO Servicer, or, at the option of the Provider, may determine the account to be delinquent, past due, and in default. Once the medical account is determined to be delinquent it may be subject to late fees, interest as stated, referral to a collection agency for collection as a delinquent account, credit bureau reporting and enforcement by legal proceedings."

15. Fourney received no communications from NPAS other than the letter attached as Exhibit B here. (Plaintiff's Interrogatory Responses ¶ 3, attached as Exhibit D).

16. Fourney had no communications with other third parties regarding the account referenced in the letter. (Plaintiff's Interrogatory Responses ¶ 4, attached as Exhibit D).

## STANDARD FOR SUMMARY JUDGMENT

A moving party is entitled to summary judgment when the pleadings and record evidence show that "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit under the governing law," and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As the party moving for summary judgment, NPAS bears the initial responsibility of identifying the portions of the record that demonstrate the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, the non-moving party bears the burden of proving material facts at trial, NPAS may satisfy its responsibility either by showing Plaintiff's inability to establish such material facts, or merely the absence of evidentiary support in the record for such material facts. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011). Once NPAS satisfies its responsibility, the burden then shifts to Plaintiff to produce evidence of the existence of a genuine issue of material fact. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

## ARGUMENT

NPAS is entitled to summary judgment on both of Fourney's claims. Fourney's claim under the FDCPA fails because NPAS is not a "debt collector" and did not communicate with him about a "debt" as those terms are defined in the FDCPA. Fourney's claim under the FCCPA fails because he does not allege an independent violation of the FCCPA; rather, he claims NPAS's alleged violation of the FDCPA constitutes a violation of the FCCPA. But, as noted, Fourney's claim under the FDCPA fails and therefore his FCCPA claim fails as well.

### I. NPAS Is Entitled to Summary Judgment on the FDCPA Claim.

To prevail on a claim under the FDCPA, a plaintiff must plead and prove: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the statute; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *Eke v. FirstBank Florida*, 779 F. Supp. 2d 1354, 1357 (S.D. Fla. 2011), citing *Sanz v. Fernandez*, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009).

Generally, a debt collector is one who (a) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or (b) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

There are six statutory exceptions to the preceding general definition. The exception at 15 U.S.C. § 1692a(6)(F)(iii) is germane here: the term "debt collector" does "not include" a "person collecting or attempting to collect any debt owed or due or asserted to be due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person[.]"

Fourney cannot establish NPAS acted as a debt collector in sending the letter, rather than as someone "attempting to collect any debt owed or due or asserted to be due another . . . concern[ing] a debt which was not in default at the time it was obtained by such person." He therefore cannot establish NPAS acted as a debt collector or that, as a non-debt-collector, it was required to supply the warnings he claims were omitted from NPAS's letter.

**A. The Debt Was Not in Default at the Time It Was Placed With NPAS.**

As noted, 15 U.S.C. § 1692a(6)(F)(iii) excepts from the definition of "debt collector" any "person collecting or attempting to collect any debt owed or due or asserted to be due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person[.]" "In other words," the Eleventh Circuit has held, "an entity that seeks to collect a debt that was not in default when the entity acquired it does not qualify as a debt collector for purposes of the FDCPA." *Solis v. CitiMortgage, Inc.*, 699 Fed. Appx. 891,

894 (11th Cir. 2017) (unpublished), citing *Davidson v. Capital One Bank (USA), NA*, 797 F.3d 1309, 1314 (11th Cir. 2015).

The debt was not in default at the time it was placed with NPAS. The Conditions of Admission contract expressly addresses billing issues:

> **Third Party Collection.** I acknowledge that the Providers may utilize the services of a third party Business Associate or affiliated entity as an extended business office ("EBO Servicer") for medical account billing and servicing.

This language put Fourney on notice that an outside EBO Servicer – such as NPAS – may contact him regarding unpaid accounts for medical services.[1]

The paragraph continues (emphasis added):

> During the time that the medical account is being serviced by the EBO Servicer, ***the account shall not be considered delinquent, past due or in default, and shall not be reported to a credit bureau or subject to collection legal proceedings***.

This language expressly informed Fourney that, when an EBO Servicer is servicing his medical account, the underlying obligation is not delinquent or in default.

The Conditions of Admission contract further explained to Fourney (emphasis added):

---

1 Federal cases acknowledge the nature of these extended business offices, or "EBO Servicers," such as NPAS, and their role in servicing medical accounts before the debt is in default. *See, e.g.*, *Roberts v. NRA Group, LLC*, 2012 WL 3288076, at *1 (M.D. Pa. Aug. 10, 2012) ("Typically, an 'early out agency' will attempt to collect the debt for 120 to 150 days, and if payment is not received in that time period, then the account will be turned back over to the hospital's business office."); *Church v. Accretive Health, Inc.*, 2015 WL 7572338, at *10, *13 (S.D. Ala. Nov. 24, 2015), *aff'd*, 654 Fed. App'x 990 (11th Cir. 2016) (observing that the defendant was assigned the debt for "'early-out' or pre-collection services, typically for a minimum of 90 days"); *Paladino v. California Bus. Bureau, Inc.*, 2015 WL 12532474, at *3 (S.D. Cal. Nov. 17, 2015) (explaining the relationship between the treating hospital and the "early out" defendant as follows: the patient would receive three monthly statements from the early-out vendor, and the debt would then be moved to "bad debt" 45 days after the final, third patient statement).

> When the EBO Servicer's efforts to obtain payment have been exhausted due to a number of factors, . . . the EBO Servicer ***will send a final notice letter which will include the date that the medical account may be returned from the EBO Servicer to the Provider***.

In other words, Fourney's balance would not be considered delinquent or in default until – at the very least – sometime after he received a final notice letter from NPAS. Fourney admitted in his response to NPAS's Interrogatories that he received no such letter.

The Conditions of Admission contract also makes clear that an account may be "delinquent, past due and in default" only after it is no longer being serviced by an EBO Servicer (like NPAS) but instead is being serviced by a separate entity – a "collection agency":

> Upon return [of the medical account] to the Provider by the EBO Servicer, the Provider may place the account back with the EBO Servicer, or, at the option of the Provider, may determine the account to be ***delinquent, past due, and in default***. Once the medical account is determined to be delinquent it may be subject to late fees, interest as stated, referral to a collection agency for collection as a delinquent account, credit bureau reporting and enforcement by legal proceedings.

Again, in Fourney's response to NPAS's Interrogatories, he acknowledged that he received no such communications.

Case authority supports the NPAS's position that the account was not in default. The Second Circuit observed in a widely-cited opinion that the FDCPA does not define the term "default," so courts must instead look to case law distinguishing between debt that is "in default" as opposed to debt that is "merely outstanding." *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86-87 (2d Cir. 2003). Examples include student loans (default after either 180 or 270 days of delinquency, depending on the type of loan), loans by federally insured depository

institutions (90 days), and farm loans (30 days). *Id*. at 87. In any event, the Second Circuit found no authority supporting the proposition that default occurs immediately after a debt becomes due. *Id*.; *see also Sharke v. Credit Prot. Depot, Inc.*, 2013 WL 1810824, at *5 (M.D. Fla. Apr. 29, 2013) (granting defendant's motion for summary judgment; relying on *Alibrandi* in holding that the defendant fell squarely within the Section 1692(a)(6)(F)(iii) exception to the definition of "debt collector" that applies to entities attempting to collecting on a debt not in default at the time it was obtained).

Other courts have likewise held that a mere outstanding balance is not automatically a debt in "default" immediately after it becomes due and, thus, that no claim could be maintained under the FDCPA because the defendant was not a debt collector. *See Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) (holding defendants were not "debt collectors" because the debt was not in default; emphasizing distinction between "an individual who seeks collection on a defaulted debt and one who seeks collection on a debt owed under a brand new payment plan"); *Church v. Accretive Health, Inc.*, 2015 WL 7572338, at *10, *13 (S.D. Ala. Nov. 24, 2015), *aff'd*, 654 Fed. App'x 990 (11th Cir. 2016) (holding that the debt was not in "default"; that the defendant was thus not a "debt collector"; and that the challenged collection activity was not actionable under the FDCPA; *Roberts v. NRA Group, LLC*, 2012 WL 3288076, at *5-6 (M.D. Pa. Aug. 10, 2012) (holding that the defendant was an early-out collector; that the debt was not in "default" at the time it was placed with the defendant; and that the defendant was thus not a "debt collector" under the FDCPA); *Paladino v. California Bus. Bureau, Inc.*, 2015 WL 12532474, at *4 (S.D. Cal. Nov. 17, 2015) (holding that the patient-plaintiff's debt was "current"

– not delinquent – when the early-out defendant obtained it; that the debt was thus not in default when the early-out defendant obtained it; and, thus, that the early-out defendant was not a "debt collector" under the FDCPA, precluding the plaintiff's claims).

There is good reason for the courts' distinction between obligations that are current and debts that are "in default" – and, likewise, between entities that service obligations that are current and debts that are in default. The *Alibrandi* court opined that "the FDCPA's broad, pro-debtor objectives would not be served" if it adopted the plaintiff's argument that "default" occurs immediately after a payment becomes due. *Alibrandi*, 333 F.3d at 87; *see also id*. at 87 n. 5 ("the interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default, according to their respective circumstances and business interests"). After all, if a debt were to be considered immediately in default, as the *Alibrandi* plaintiff argued, it would have "the paradoxical effect of immediately exposing debtors to the sort of adverse measures, such as acceleration, repossession, increased interest rates, and negative reports to credit bureaus, from which the [FDCPA] intended to afford debtors a measure of protection." *Id*. Such a construction would run contrary to the policy behind the FDCPA.

Indeed, the U.S. District Court for the Middle District of Florida recently entered summary judgment in favor of NPAS on similar facts. *See,* Order Granting NPAS's Motion for Summary Judgment (June 14, 2019) [Doc 59] in *Nidia Reyes Collazo v. NPAS, Inc.*, M.D. Fla., Case No. 8:18-cv-2508-T-3-AEP, Moody, James S., District Judge, attached here as Exhibit E. There, the plaintiff sued NPAS under the FDCPA for omitting to include in its letters that it was

a debt collector. NPAS moved for summary judgment on grounds that it was not a debt collector and therefore was not required under the FDCPA to provide such disclosures.

The plaintiff in that case received medical treatment at Largo Medical Center in Largo, Florida. The plaintiff executed a conditions of admission document identical in relevant part to the one executed by Fourney here: It provided for use of an EBO servicer, provided that the account would not be considered delinquent while with the EBO servicer, and stated that the account would be considered delinquent only upon issuance of a final notice letter and return to the facility, etc.). Order, at 3-4.

The plaintiff there received two letter from NPAS. The first, like the letter at issue in this case, requested that payment be made to the medical facility, rather than NPAS, and included the same description of NPAS as being a "company that is managing your account for the healthcare provider." (The second letter was essentially the same.) Order, at 4-6.

The *Collazo* court entered summary judgment for NPAS. *Collazo v. NPAS, Inc.*, M.D. Fla., 8:18-cv-2508-T-3-AEP [Doc 59] (June 14, 2019), attached here as Exhibit E. In so doing, the court held that "the critical, dispositive issue in this case is whether [the plaintiff's] account was in default at the time NPAS sent the two billing statements." Order, at 9. The court found the account *was not* in default and therefore NPAS was not acting as a debt collector. Order, at 9-12. To reach that conclusion, the court first looked at the Conditions of Admission, which provided the healthcare facility "may only determine an account to be 'delinquent, past due and in default' *after* the EBO Servicer returned the account and *after* the EBO Servicer sent its final

notice letter." Order, at 11 (emphasis in original). In *Collazo* – as in this case – NPAS had not returned the account and had not sent its final notice letter.

The court noted that "an examination of the two billing statements also reflects that Collazo's account was not considered in default or delinquent at those times." Order, at 11. On that score, the court observed that both statements, like the letter at issue in this case, "explained that NPAS was a company 'managing' the account for [the healthcare facility]." Order, at 12. "At most," the court concluded, the plaintiff's "account was 'merely outstanding' at that time." Order, at 12 (citing *Alibrandi*).

The Conditions of Admission contract in the instant case – which the Plaintiff executed – is consistent with the *Alibrandi* court's interpretation of the FDCPA by distinguishing early-out servicing of an obligation from collecting delinquent debts. The early-out servicing allows the parties to amicably resolve the account without any "adverse" measures.

Based on the terms of the Letter, the Conditions of Admission, and the weight of authority grounded on similar facts, Fourney has not established and cannot establish, that NPAS acted as a "debt collector" under the FDCPA when Defendant sent the Letter. To the contrary, all available record evidence shows the account was not in default when placed with NPAS. NPAS did not act as a debt collector when it sent the letter and therefore was not obligated to supply the warnings Fourney complains NPAS omitted to supply.

**II. NPAS Is Entitled to Summary Judgment on the FCCPA Claim.**

Fourney alleges NPAS's Letter omitted to supply information required by the FDCPA. The FCCPA does not require the disclosure of that information; instead, Fourney's FCCPA

claim is predicated on the alleged omission constituting a breach of the FDCPA. As explained above, NPAS was not required under the FDCPA to include the notices Fourney complains were missing from the Letter. As a consequence, Fourney's derivative FCCPA claim also fails as a matter of law.

## CONCLUSION

For the foregoing reasons, NPAS respectfully states it is entitled to summary judgment in its favor on both of Fourney's claims in accordance with Defendant's prayer in its Motion for Summary Judgment above.

Date: June 25, 2019

Respectfully submitted,

/s/ Gonzalo Barr

Gonzalo Barr
Florida Bar No. 0001790
gbarr@gonzalobarrllc.com
Gonzalo Barr LLC
201 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
Tel: (786) 483-7907
Fax: (305) 448-7085
Attorney for Defendant NPAS, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on June 25, 2019 on all counsel of record on the service list below.

/s/ Gonzalo Barr

Service List

Attorney Janelle A. Weber
jweber@jenelleweberlaw.com
Law Office of Janelle A. Weber
1520 West Cleveland Street, Suite A
Tampa, Florida 33606
Telephone: (813) 982-6633
Facsimile: (813) 982-3810
Attorney for Plaintiff, John Fourney